## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**TEMUJIN KENSU,**

      **PLAINTIFF,**

**V.**                                **CASE NO.: 22-cv-11834**

**DANA NESSEL, individually**         **JURY DEMAND**
**and in her official capacity as Attorney**
**General of the State of Michigan,**

      **DEFENDANT.**

---

## FIRST AMENDED COMPLAINT

### I.    INTRODUCTION

The Michigan Attorney General's Office ("MIAG") established a statewide conviction integrity unit titled Michigan General Conviction Integrity Unit ("CIU") to investigate claims of innocence by determining whether there is new evidence to exonerate the convicted. Attorney General Dana Nessel established the CIU to embody the commitment of the MIAG to correct wrongful convictions. This Complaint arises from the actions and/or inaction taken by Attorney General Dana Nessel in relation to the CIU. Plaintiff is seeking injunctive relief for violations of 42 U.S.C. §1983, breach of contract and various other claims.

## II.   PARTIES

1.   Plaintiff Temujin Kensu (hereinafter "Plaintiff") is a prisoner in the custody of the Michigan Department of Corrections.

2.   Plaintiff has been confined at various facilities within the Michigan Department of Corrections and is currently confined at Macomb Correctional Facility, 34525 26 Mile Road, New Haven, MI 48048.

3.   Defendant Dana Nessel ("Defendant") individually and in her official capacity as Attorney General of the State of Michigan obtained the grant and is commissioned with carrying out the responsibilities and duties of the CIU.

## III.   JURISDICTION & VENUE

4.   Plaintiff's claims arise pursuant to 42 U.S.C. §1983.  Supplemental jurisdiction exists pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

5.   Personal jurisdiction exists over the Defendant.

6.   Venue is proper pursuant to 28 U.S.C. §1391.

7.   The events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

8.   Plaintiff is not required to exhaust any administrative remedies prior to bringing this action.

## IV.   FACTS

9.   On April 10, 2019, the Michigan Attorney General's Office established

a statewide conviction integrity unit, the Michigan Attorney General Conviction Integrity Unit ("CIU").

10.   Plaintiff's counsel was informed in a December 29, 2020, phone call from the Governor's office that clemency would be denied because there remained one more option for him to exhaust, the Attorney General's CIU review process.

11.   Plaintiff submitted his Application to the CIU on the CIU's Application ("Plaintiff's CIU Application").

12.   In Plaintiff's CIU Application, Plaintiff provided as requested in the CIU Application all prior decisions, Direct appeal - 103276 (COA), 98074 (MSC); 1st 6500 motion- 260864 (COA), 129522 (MSC); 2nd 6500 motion- 311257 (COA), 152340 (MSC); *Freeman v Trombley*, 744 F Supp 2d 697 (ED Mich 2010); *Freeman v Trombley*, 483 F App'x 51 (CA 6, 2012); and *People v Freeman*, 2015 WL 4599481(Mich Ct App, July 30, 2015).

13.   The CIU accepted Plaintiff's CIU Application and conducted an investigation.

14.   In February 2021, Plaintiff was informed that the CIU had concluded their investigation and a findings/report was prepared advising the Defendant that the investigation and the evidence indicated that Plaintiff was innocent and remedial actions should be taken to exonerate the Plaintiff.

15.   On October 27, 2021, an email was sent to the CIU from the Michigan

3

Innocence clinic setting out key facts and new evidence since trial.

16.  CIU accepting Plaintiff's CIU application, conducting an investigation, and rendered a report/findings based on the investigation is a binding agreement to act in accordance with the protocols in place at the time of the application and investigation.

17.  Plaintiff detrimentally relied, once his CIU application was accepted, investigated and findings made thereon, that the Defendant's actions would be in accordance with the protocols of the application, grant and ethical obligations as a District Attorney.

18.  Plaintiff after more than two years of pursuing relief through the Defendant and the CIU, Plaintiff was denied relief on procedural and technical grounds as set out in CIU's denial letter.

19.  The CIU has accepted the same applications as Plaintiff's CIU Application, conducted investigations for inmates Ken Nixon, Larry Smith, Marvin Cotton, Erin Salter and decided "While not admitting actual innocence, we can no longer support the continued incarceration of this individual" which resulted in their release.

20.  The CIU reduced inmate Ray Gray's 1st degree to 2nd degree.

21.  On June 10, 2022, the Plaintiff filed a FOIA request to obtain the CIU findings/report.

4

22.   To date, the Plaintiff has not received the requested documents under the FOIA.

23.   Defendant has personally as an Officer of the Court and professionally as the District Attorney failed/refused to take remedial actions to exonerate Plaintiff.

24.   Defendant has personally as an Officer of the Court and professionally acted outside the scope of her employment and obligations and duties as District Attorney failed/refused to take remedial actions to exonerate Plaintiff.

## A.   CIU APPLICATION FOR GRANT

25.   The CIU stated in their grant application with the U.S. Department of Justice Office of Justice Programs, National Institute of Justice ("NIJ Application") that the CIU's purpose was to "investigate claims of innocence to determine whether there is new evidence that the convicted defendant was not the person who committed the conviction offense." (NIJ Appl. p. 1).

26.   Attorney General Dana Nessel established the CIU to exemplify the commitment that the Michigan Attorney General's Office ("MIAG") has to correct wrongful convictions. (NIJ Appl. p. 1).

27.   The MIAG's office takes seriously its duty to ensure those convicted of state crimes, whether by county prosecutors or the MIAG's office itself, are in fact guilty of those crimes, and to develop strategies to prevent and rectify wrongful convictions. (NIJ Appl. p. 1).

28.   The CIU is designed to ensure that duty is met, and to provide justice to those wrongfully convicted while keeping dangerous offenders out of Michigan's communities. (NIJ Appl. p. 1).

29.   The CIU is one of the first statewide conviction integrity units in the country. (NIJ Appl. p. 1).

30.   The CIU was created to review eligible claims of innocence in 82 of Michigan's 83 counties. (NIJ Appl. p. 1).

31.   The establishment of the CIU provides a non-adversarial forum for the review of post-conviction claims of innocence throughout the state. (NIJ Appl. p. 1).

32.   Through the CIU, justice will be more efficient. (NIJ Appl. p. 1).

33.   Once a claimant has been determined to be actually innocent, Attorney General Nessel will take appropriate remedial action, including supporting requests for new trials and dismissal of criminal charges. (NIJ Appl. p. 1).

34.   The purpose of the NIJ grant funds for the CIU project will include the following:

1) support the review of approximately 300 cases across 82 of the state's 83 counties to assess whether post-conviction DNA testing may show actual innocence,

2) increase post-conviction DNA testing in appropriate cases,

3) reduce the turnaround time in completing post-conviction DNA

testing cases,

    4) support the timely and thorough search for evidence,

    5) support quality case review through the use of experts and DNA testing, and

    6) develop relevant best practices for the State of Michigan. (NIJ Appl. p. 1).

35.   Under the project design, the CIU will refer requests for postconviction DNA testing to the Cooley IP for case review. (NIJ Appl. p. 4).

36.   The Cooley IP will review the case to determine whether biological evidence was collected during the investigation and whether testing of such evidence would support the prisoner's claim of innocence. (NIJ Appl. p. 5).

37.   The Cooley IP staff attorney will work directly with the CIU attorney on what evidentiary items to test and what type of testing should be conducted. (NIJ Appl. p.5).

38.   Once evidence is confirmed, the Cooley IP will enter into a formal attorney-client relationship with the applicant. (NIJ Appl. p. 5).

39.   Since 2001, the Cooley IP has screened over 5800 cases. (NIJ Appl. p. 5).

40.   4222 cases have been screened in the 82 counties to be served. (NIJ Appl. p. 5).

41.   The CIU expects an increase in the number of requests for assistance as more prisoners learn about the CIU unit.

42.   The Cooley IP receives approximately 4 new requests for assistance each week. (NIJ Appl. p. 6).

43.   Based on the DNA results obtained, the CIU will make a recommendation to the MIAG about the appropriate remedy, if any. (NIJ Appl. p. 6)

44.   The MIAG will make all final decisions about whether a remedy should be provided to a person seeking review by the CIU.  (NIJ Appl. p. 6).

45.   It is anticipated that within the two-year project period, MIAG and Cooley IP will be able to screen cases and conduct testing where appropriate in all pending cases and those requests received during the grant period. (NIJ Appl. p. 6).

46.    CIU's stated outcome of the project in the grant application:

Outcome (1): Review approximately 300 violent felony cases to assess whether post-conviction DNA testing of material biological evidence could prove actual innocence. CIU has begun to receive requests for assistance. The Cooley IP currently has approximately 162 non-Wayne County cases under review. Since the CIU and the Cooley IP will work cooperatively, no court filings will be required before testing. This will significantly reduce the time between case review and testing. This collaboration will allow for evidence to

be tested in a larger number of cases in a shorter period of time. This directly

supports Goals 1 and 2.

Outcome (2): Reduce the turnaround time in completing post-

conviction DNA testing cases.

Outcome (3): Provide timely and thorough searches for evidence.

Outcome (4): Increase post-conviction DNA testing in violent felony

cases in Michigan.

Outcome (5): Provide quality case review through the use of experts.

Outcome (6): Establish best practices for post-conviction DNA testing

for the State of Michigan. (NIJ Appl. p. 9-10).

**B.** **CIU ORIGINAL STANDARDS IN PLACE AT TIME OF PLAINTIFF'S APPLICATION AND SUBMISSION OF CIU INVESTIGATIVE REPORT**

47.  CIU Application eligibility:

Before you prepare this application, be sure that you are eligible for

review by CIU. The Conviction Integrity Unit only will accept requests

for review that meet all of the following standards:

• The conviction(s) must have been obtained by a prosecutorial agency

in the State of Michigan, Court in the State of Michigan. CIU does not review

convictions obtained in any other State or in any federal proceeding.

• The CIU only will review a criminal conviction where the defendant claims that he or she is actually innocent of the offense or conviction. "Actual innocence" means that the defendant bore no criminal responsibility at all for the offense.

• A defendant only may seek review from the CIU after a final judgment of conviction has been entered and a sentence has been imposed.

• A claim of "actual innocence" must be supported by new evidence that was not known to the judge or jury which returned the verdict of guilty against the defendant. This new evidence must provide a substantial basis to believe that the defendant is actually innocent, which generally means that the evidence exonerates the defendant from any criminal responsibility for the offense.

48.   The goal of the CIU project is to investigate cases where individuals who were convicted of a violent felony request the testing of evidence, and where new technologies hold the promise of viable testing results. (NIJ Appl. p. 3).

49.   The CIU's goal by partnering with the Cooley IP is to screen and identify cases where DNA testing of material biological evidence may lead to exoneration. (NIJ Appl. p. 3).

50.   The CIU and Cooley IP will collaborate to screen promising cases of innocence and work together to locate and test material biological evidence, without

court involvement. (NIJ Appl. p. 3).

51.  If the result of the testing establishes new evidence of innocence, the MIAG will consider those results, along with the other facts of the case to determine the appropriate remedy. (NIJ Appl. p. 3).

## C.   CIU'S CURRENT STANDARDS

52. CIU's current application can be found at Michigan.cov/ag/initiatives/conviction-integrity. ("Current CIU Application").  The "Eligibility" section of the Application states:

 Before you prepare this application, be sure that you are eligible for review by CIU. The Conviction Integrity Unit only will accept requests for review that meet all of the following standards:

• The conviction(s) must have been obtained by a prosecutorial agency in the State of Michigan. CIU does not review convictions obtained in any other State or in any federal proceeding.

• The CIU only will review a criminal conviction where the defendant claims that he or she is factually innocent of the offense of conviction. "Factual innocence" means that the defendant bore no responsibility at all for the offense. (Note: this is different than actual innocence which allows for legal defenses.)

• A defendant only may seek review from the CIU after a final judgment of conviction has been entered and a sentence has been imposed.

• A claim of "factual innocence" must be supported by new evidence that was not known to the judge or jury which returned the verdict of guilty against the defendant. This new evidence must provide a substantial basis to believe that the defendant is innocent, which generally means that the evidence exonerates the defendant from any criminal responsibility for the offense.

53. The Michigan Rules of Professional Conduct 3.8 provides in part:

(f) When a prosecutor knows of new, credible, and material evidence creating a reasonable likelihood that a convicted defendant is innocent of the crime for which the defendant was convicted, the prosecutor shall:

1. promptly disclose that evidence to an appropriate court or authority, and;

2. if the conviction was obtained in the prosecutor's jurisdiction,

i. promptly disclose that evidence to the defendant unless a court authorizes delay, and;

ii. undertake further investigation, or make reasonable efforts to cause an investigation, to determine whether the defendant is innocent of the crime.

(g) When a prosecutor knows of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction is innocent of the crime for which defendant was prosecuted, the prosecutor shall seek to remedy the conviction.

(h) A prosecutor's independent judgment, made in good faith, that the new evidence is not of such nature as to trigger the obligations of section (f) and (g), though subsequently determined to have been erroneous, does not constitute a violation of this Rule.

54.   Regardless of the Michigan Rules of Professional Conduct 3.8, the current CIU places a limiting standard on the evidence reviews. As follows:

The CIU investigates claims of innocence to determine whether there is clear and convincing *new evidence* that the convicted defendant was not the person who committed the offense. (emphasis added).

To Have Your Case Reviewed:

1. You must have been convicted of a felony in the State of Michigan.

2. You must present a claim of factual innocence (you did not commit or participate in the crime charged).

13

3. The claim must be supported by information or evidence not previously litigated before the original trier of fact (jury or bench trial).

4. The new evidence or information must not have been raised during post-conviction appeals (direct appeal, federal habeas, MCR 6.500, etc.).

5. The claim must be capable of being investigated and resolved, and if substantiated, would bear directly on the issue of innocence.

6. The direct appeal has become final.

If your conviction arose out of Wayne County, and you have not already done so, please direct your inquiry to the Wayne County Prosecutor's Office, Conviction Integrity Unit.

55. The CIU investigates claims of innocence to determine whether there is clear and convincing new evidence that the convicted defendant was not the person who committed the offense.

56. The CIU makes recommendations to the Defendant about the appropriate remedy (if any) that should result from its findings. The

57. The Defendant personally, solely decides whether she will seek remedial action measures.

58. Even though the CIU based on their own investigation, entered a

14

report/findings stating that evidence showed that remedial action should to be taken to exonerate Plaintiff, the Defendant, personally, unilaterally ignored the CIU investigative findings and did not seek remedial measures on behalf of the Plaintiff.

59. The CIU is not a court and its work is not governed by any court rules of procedure. The CIU investigates claims of factual innocence based on new evidence; it does not function as a "13th juror" to review factual questions that already have been decided by a jury.

60. CIU's mission is to determine whether new evidence shows that an innocent person has been wrongfully convicted of a crime, and to recommend steps to rectify such situations.

## D.     NIJ REQUIREMENTS AND CONDITIONS PLACED ON CIU GRANT

61. The U.S. Department of Justice Office of Justise Programs, National Institute of Justice issued a grant titled "Postconviction Testing of DNA Evidence" in the amount of $734,930 to the Michigan Department of Attorney General, Award No. 2019-DY-BX-0008, Award Date: September 16, 2019, with a Project Period from January 1, 2020 to December 31, 2021.

62. The NIJ Award Special Conditions state:

> Requirements of the award; remedies for non-compliance or for materially false statements.
>
> The conditions of this award are material requirements of the award. Compliance with any assurances or certifications submitted by or on behalf of the recipient that relate to conduct during the period of

performance also is a material requirement of this award. By signing and accepting this award on behalf of the recipient, the authorized recipient official accepts all material requirements of the award, and specifically adopts all such assurances or certifications as if personally executed by the authorized recipient official.

Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or an assurance or certification related to conduct during the award period - - may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award. Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The U.S. Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

Record retention and access: Records pertinent to the award that the recipient (and any subrecipient ("subgrantee") at any tier) must retain - - typically for a period of 3 years from the date of submission of the final expenditure report (SF 425), unless a different retention period applies -- and to which the recipient (and any subrecipient "subgrantee") at any tier) must provide access, include performance measurement information, in addition to the financial records, supporting documents, statistical records, and other pertinent records indicated at 2 C.F.R. 200.333.

63.   The NIJ Grant requires retention requirements for records under 2 C.F.R. § 200.333.

64.   The C.F.R. § 200.333 states: Financial records, supporting documents, statistical records, and all other non-Federal entity records pertinent to a Federal award must be retained for a period of three years from the date of submission of the final expenditure report or, for Federal awards that are renewed quarterly or annually, from the date of the submission of the quarterly or annual financial report,

respectively, as reported to the Federal awarding agency or passthrough entity in the case of a subrecipient. Federal awarding agencies and pass-through entities must not impose any other record retention requirements upon non-Federal entities.

65.   The C.F.R. § 200.337 states no federal awarding agency may place restrictions on the non-Federal entity that limit public access to the records of the non-Federal entity pertinent to a Federal award, except for protected personally identifiable information (PII) or when the Federal awarding agency can demonstrate that such records will be kept confidential and would have been exempted from disclosure pursuant to the Freedom of Information Act (5 U.S.C. 552) or controlled unclassified information pursuant to Executive Order 13556 if the records had belonged to the Federal awarding agency.

66.   Appendix XII to Part 200 Award Term and Condition of Recipient Integrity and Performance Matters.

   A. Reporting of Matters Related to Recipient Integrity and Performance

   2. Proceedings About Which You Must Report

   Submit the information required about each proceeding that:

      a. Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

      b. Reached its final disposition during the most recent five-year period; and

      c. Is one of the following:

(1) A criminal proceeding that resulted in a conviction, as defined in paragraph 5 of this award term and condition;

(2) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

(3) An administrative proceeding, as defined in paragraph 5. of this award term and condition, that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

(4) Any other criminal, civil, or administrative proceeding if:

(i) It could have led to an outcome described in paragraph 2.c.(1), (2), or (3) of this award term and condition;

(ii) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and

(iii) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.

## E.  DEFENDANT DOES NOT HAVE GOVERNMENTAL IMMUNITY

67.  Defendant's personal and professional actions are not immune from liability.

68.  Courts have summarized and simplified the steps to follow when determining if individual governmental immunity applies.  It has been determined that a court must do the following:

(1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of

government who is entitled to absolute immunity under MCL 691.1407(5).

> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

> (3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

>> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

>> (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

>> (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

> (4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity . . . by showing the following:

>> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

>> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

>> (c) the acts were discretionary, as opposed to ministerial.

*Bonner v. Rowell*, No. 303814, 2012 Mich. App. LEXIS 2423, at *8-9 (Ct. App. Dec. 4, 2012).

## V.    CAUSES OF ACTION

## COUNT ONE – DEPRIVATION OF RIGHTS; DUE PROCESS
### (42 U.S.C. § 1983)

69.    Plaintiff incorporates by reference all the preceding paragraphs in this Complaint as if fully set forth herein.

70.    CIU accepted Plaintiff's application for CIU investigation.

71.    An investigation was conducted based on CIU's protocols.

72.    Based on the investigation conducted, a finding was made that there was evidence that the convicted defendant was not the person who committed the conviction offense.

73.    The investigative finding/report was provided to the Defendant.

74.    The Defendant took no action regarding the investigative report/findings.

75.    The Defendant failed and/or refused to act pursuant to the CIU protocols, NIJ grant, her oath as the Attorney General, and the Michigan Rules of Professional Conduct.

76.    The investigative finding/report showed that the evidence supported that the Plaintiff was actually innocent and warranted remedial action, including supporting requests for new trials and dismissal of criminal charges.

77.    Once it was determined that the Plaintiff was actually innocent, Defendant had a duty to take appropriate remedial action, including supporting

requests for a new trial and dismissal of criminal charges.

78.    The Defendant had a duty to take remedial action per protocols set forth in the NIJ Application, the awarding of the grant, and the CIU Application.

79.    Pursuant to MCL 691.1407(5), Defendant is not entitled to immunity under the statute because she acted outside the scope of her authority. *Bonner v. Rowell*, No. 303814, 2012 Mich. App. LEXIS 2423, at *10-11 (Ct. App. Dec. 4, 2012).

80.    Plaintiff seeks equitable relief for "tort liability", therefore, the immunity protection afforded under MCL 691.1407(5) does not extend to alleged constitutional violations for which a party seeks equitable relief. *Duncan v Michigan*, 284 Mich App 246, 271-272; 774 NW2d 89 (2009), aff'd on other grounds 486 Mich 906 (2010) (governor not shielded by immunity under MCL 691.1407[5] on various claims, including alleged violation of due process under Const 1963, art 1, § 17, whereon declaratory and injunctive relief was sought). *Bonner v. Rowell*, No. 303814, 2012 Mich. App. LEXIS 2423, at *13-14 (Ct. App. Dec. 4, 2012)

81.    Based on the DNA results obtained in the investigation conducted of Plaintiff's evidence, the CIU had a duty to make a recommendation to the MIAG about the appropriate remedial action, including supporting requests for new trials and dismissal of criminal charges.

82.    Defendant personally nor professionally fulfilled her duty of the CIU

once the investigative report/findings were provided to the Defendant by seeking remedial action on behalf the Plaintiff.

83. Instead of acting in accordance with investigative findings/report, the Defendant personally, professionally, unilaterally, acted outside her scope of employment as Attorney General by determining without any merit that Plaintiff's CIU Application did not fit the criteria for the CIU.

84. Defendant's determination that the Plaintiff's Application did not fit the criteria for an investigation by the CIU was made after the CIU accepted Plaintiff's application, conducted the investigation, and rendered a finding/report that the evidence supported that the Plaintiff was innocent of the crime and warranted remedial action.

85. Defendant personally, professionally, unilaterally, acted outside her scope of employment for changing the criteria of the CIU Application.

86. Regardless of the Michigan Rules of Professional Conduct 3.8, the current CIU places a limiting standard on the evidence reviews. As follows:

> The CIU investigates claims of innocence to determine whether there is clear and convincing *new evidence* that the convicted defendant was not the person who committed the offense. (emphasis added).
>
> To Have Your Case Reviewed:
>
> 1. You must have been convicted of a felony in the State of Michigan.

2. You must present a claim of factual innocence (you did not commit or participate in the crime charged).

3. The claim must be supported by information or evidence not previously litigated before the original trier of fact (jury or bench trial).

4. The new evidence or information must not have been raised during post-conviction appeals (direct appeal, federal habeas, MCR 6.500, etc.).

5. The claim must be capable of being investigated and resolved, and if substantiated, would bear directly on the issue of innocence.

6. The direct appeal has become final.

87. The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction to the purpose of the CIU.

88. The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction for submission of a CIU application at the time Plaintiff submitted his application and detrimentally relied on the CIU.

89. The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction to the application

submitted by the CIU for the grant.

90.   The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction to Mich. Comp. Laws § 770.16(8).

91.   The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction to Mich. Comp. Laws § 770.16(8).

92.   The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction to the Michigan Rules of Professional Conduct 3.8.

93.   The new criteria, "new evidence or information must not have been raised during the post-conviction appeals" is a contradiction to Defendant's duty as Attorney General.

94.   Defendant personally and professionally violated Plaintiff's right to due process under the Fourteenth Amendment.

95.   Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to the obligations set forth in the NIJ guidelines for requesting, receiving and using the NIJ grant.

96.   Plaintiff has been damaged by the Defendant failing and/or refusing to follow the established requirements of the CIU Application.

97.    Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to the Michigan Rules of Professional Conduct 3.8.

98.    Plaintiff has been damaged by the Defendant failing and/or refusing to take remedial action to request a new trial or dismissal of criminal charges in light of the results of the CIU's investigation.

99.    Plaintiff has been damaged by not being exonerated.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendant for her personal and professional actions in favor of Plaintiff for an injunction prohibiting the Defendant's wrongful actions;

(b)    Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)    Grant such other and further relief as justice requires.

## COUNT TWO – TORTIOUS INTERFERENCE

100. Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

101. The facts setout herein supports a claim for tortious interference. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the

defendant." *Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 268 Mich. App. 83, 89-90; 706 N.W.2d 843 (2005). A claim for tortious interference with a business relationship or expectancy requires proof of (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy by the interferer, (3) an intentional and wrongful interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy was disrupted. *PT Today, Inc v Comm'r of the Office of Financial & Ins Services*, 270 Mich. App. 110, 148; 715 N.W.2d 398 (2006).

102. Tortious interference with a business relationship or expectancy need not be predicated on an enforceable contract. *Health Call of Detroit, supra* at 90.

103. Plaintiff can prove improper interference by Defendant both personally and professionally. *Patillo v. Equitable Life Assurance Society of the United States*, 199 Mich. App. 450, 457; 502 N.W.2d 696 (1992).

104. Defendant's personal and professional intentional act lacked justification and purposely interfered with Plaintiff's contractual rights and/or Plaintiff's expectancy that Defendant would follow the NIJ funding requirements, CIU protocols, CIU Application requirements, Michigan Bar ethical obligations and protection of Plaintiff's guaranteed constitutional rights. *Winiemko v. Valenti*, 203 Mich. App. 411, 418 n 3; 513 N.W.2d 181 (1994) (citations omitted); *Feldman v*

*Green*, 138 Mich. App. 360, 369; 360 N.W.2d 881 (1984).

105. Defendant's "improper" interference can be shown either by proving (1) the intentional doing of an act wrongful *per se*, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship. *Id.* [*Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich. App. 365, 383; 670 N.W.2d 569 (2003), aff'd 472 Mich. 91 (2005).] *Collins v. Ham,* Nos. 275493, 275494, 2008 Mich. App. LEXIS 1276, at *7-9 (Ct. App. June 17, 2008).

106. Defendant's unjustified in law, arbitrarily changing the requirements of the CIU Application was an intentional wrongful *per se* act and was done with malice and was done for the purpose of invading Plaintiff's contractual rights/detrimentally relied upon benefits.

107. Defendant's failing and/or refusing to seek remedial actions after the CIU investigative findings/report warranted same was an intentional wrongful *per se* act.

108. Defendant personally nor professionally fulfilled her duty of the CIU once the investigative report/findings were provided to the Defendant by seeking remedial action on behalf the Plaintiff.

109. Instead of acting in accordance with investigative findings/report, the Defendant personally, professionally, unilaterally, acted outside her scope of

employment as Attorney General by determining without any merit that Plaintiff's CIU Application did not fit the criteria for the CIU.

110. Plaintiff has been damaged by the Defendant failing and/or refusing to take remedial action to request a new trial or dismissal of criminal charges in light of the results of the CIU's investigation.

111. Plaintiff has been damaged by not being exonerated.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendant for her personal and professional actions in favor of Plaintiff for an injunction prohibiting the Defendant's wrongful actions;

(b)     Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)     Grant such other and further relief as justice requires.

## COUNT THREE - BREACH OF CONTRACT

112. Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

113. By Plaintiff's filling out the CIU Application, submitting to the Defendant, participating in the CIU investigation, Plaintiff in effect entered in a contractual agreement with the Defendant.

114. Plaintiff had a contractual agreement with the Defendant to act in accordance with the purposes of the CIU and to follow all laws and regulations as Attorney General.

115. Plaintiff detrimentally relied on the CIU to fulfill their obligations under the contractual agreement and did not file an appeal based on the duties, promises and responsibilities that were to be afforded by the CIU to Plaintiff.

116. Plaintiff detrimentally relied on the CIU investigation, the findings/report and communications that evidence showed that remedial actions were warranted.

117. Plaintiff detrimentally relied on the CIU's goal by partnering with the Cooley IP to screen and identify cases where DNA testing of material biological evidence may lead to exoneration. (NIJ Appl. p. 3).

118. Plaintiff was under the information and belief that based on the CIU he was going to be released from incarceration.

119. Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to the obligations set forth in the NIJ guidelines for requesting, receiving and using the NIJ grant.

120. Plaintiff has been damaged by the Defendant failing and/or refusing to follow the established requirements of the CIU Application.

121.  Plaintiff has been damaged by the Defendant failing and/or refusing to

adhere to the Michigan Rules of Professional Conduct 3.8.

122. Plaintiff has been damaged by the Defendant failing and/or refusing to take remedial action to request a new trial or dismissal of criminal charges in light of the results of the CIU's investigation.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendant and in favor of Plaintiff for an injunction prohibiting the Defendant's wrongful actions;

(b)    Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)    Grant such other and further relief as justice requires.

**COUNT FOUR – VIOLATIONS OF FFATA FEDERAL FUNDING ACCOUNTABILITY AND TRANSPARENCY ACT OF 2006 OR TRANSPARENCY ACT
- PUBLIC LAW 109-282, AS AMENDED BY SECTION 6202(A) OF PUBLIC LAW 110-252 (31 U.S.C. 6101)
(42 U.S.C. § 1983)**

123. Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

124. The Federal Funding Accountability and Transparency Act (FFATA) was signed on September 26, 2006. The intent is to empower every American with the ability to hold the government accountable for each spending decision. The end result is to reduce wasteful spending in the government. The FFATA legislation

requires information on federal awards (federal financial assistance and expenditures) be made available to the public via a single, searchable website, which is www.USASpending.gov.

125. Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to the obligations set forth in the NIJ guidelines for requesting, receiving and using the NIJ grant.

126. Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to The Federal Funding Accountability and Transparency Act (FFATA) causing an indifference to Plaintiff's rights under 42 U.S.C. § 1983.

127. Defendant violated Plaintiff's right to due process under the Fourteenth Amendment and under 42 U.S.C. § 1983.

128. Plaintiff has been damaged by the Defendant failing and/or refusing to follow the established requirements of the CIU Application.

129.  Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to the Michigan Rules of Professional Conduct 3.8.

130. Plaintiff has been damaged by the Defendant failing and/or refusing to take remedial action to request a new trial or dismissal of criminal charges in light of the results of the CIU's investigation.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendant and in favor of Plaintiff for an injunction prohibiting the Defendant's wrongful actions;

(b)   Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)   Grant such other and further relief as justice requires.

## COUNT FIVE – VIOLATIONS OF MICHIGAN COMP. LAWS § 770.16 – DNA TESTING
## (42 U.S.C. § 1983)

131. Plaintiff incorporates all previous paragraphs of this Complaint as if fully set forth herein.

132. Plaintiff detrimentally relied on the CIU conducting in good faith an investigation and acting on the findings of that investigation and did not file a petition with the circuit court pursuant to Mich. Comp. Laws § 770.16(1) to order DNA testing of biological material identified during the investigation leading to his conviction.

133. Under Mich. Comp. Laws § 770.16(1) …a defendant convicted of a felony at trial before January 8, 2001 who is serving a prison sentence for the felony conviction may petition the circuit court to order DNA testing of biological material identified during the investigation leading to his or her conviction, and for a new trial based on the results of that testing.

134. Under Mich. Comp. Laws § 770.16(8) states: "If the results of the DNA testing show that the defendant is not the source of the identified biological material, the court shall appoint counsel pursuant to MCR 6.505(A) and hold a hearing to determine by clear and convincing evidence all of the following: (a) That only the perpetrator of the crime or crimes for which the defendant was convicted could be the source of the identified biological material. (b) That the identified biological material was collected, handled, and preserved by procedures that allow the court to find that the identified biological material is not contaminated or is not so degraded that the DNA profile of the tested sample of the identified biological material cannot be determined to be identical to the DNA profile of the sample initially collected during the investigation described in subsection (1). (c) That the defendant's purported exclusion as the source of the identified biological material, balanced against the other evidence in the case, is sufficient to justify the grant of a new trial."

135. Defendant personally and professionally failed to act in accordance with the Michigan Comp. Laws § 770.16 which caused indifference of Plaintiff's rights afforded under the protection of 42 USC § 1983.

136. Plaintiff has been damaged by the Defendant failing and/or refusing to adhere to Michigan Comp. Laws § 770.16 causing an indifference to Plaintiff's rights under 42 U.S.C. § 1983.

137. Defendant violated Plaintiff's right to due process under the Fourteenth

Amendment and under 42 U.S.C. § 1983.

138. Plaintiff is damaged for detrimentally relying on the CIU to act within the principals and purpose as set out in their application to the U.S. Department of Justice Office of Justise Programs, National Institute of Justice grant which was received by the CIU.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendant and in favor of Plaintiff for an injunction prohibiting the Defendant's wrongful actions;

(b)     Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)     Grant such other and further relief as justice requires.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues stated in this action.


Respectfully submitted this the 23rd day of September, 2022.

> */s/ Keith Altman*
> Keith Altman, Esq. (P81702)
> The Law Office of Keith Altman
> 33228 West 12 Mile Road - Suite 375
> Farmington Hills, Michigan 48331
> Telephone: (248) 987-8929
> keithaltman@kaltmanlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TEMUJIN KENSU,**

       **PLAINTIFF,**

**V.**                                                      **CASE NO.: 22-cv-11834**

**DANA NESSEL, individually**
**and in her official capacity as Attorney**
**General of the State of Michigan,**

       **DEFENDANT.**

---

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, I served the foregoing

Plaintiff's First Amended Complaint upon all parties herein by filing copies of

same using the Court's CM/ECF System.

> */s/ Keith Altman*
> Keith Altman, Esq. (P81702)
> The Law Office of Keith Altman
> 33228 West 12 Mile Road - Suite 375
> Farmington Hills, Michigan 48331
> Telephone: (248) 987-8929
> keithaltman@kaltmanlaw.com