UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

      Plaintiff,

                                    No. 22-cv-11834

v

                                      HON. DAVID M. LAWSON

DANA NESSEL, individually and in
official capacity as Attorney General of      MAG. KIMBERLY G. ALTMAN
the State of Michigan,

      Defendant.

Keith Altman (P81702)
The Law Office of Keith Altman
Attorney for Plaintiff
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48331
(248) 987-8929
keithaltman@kaltmanlaw.com

Bryan W. Beach (P69681)
Kimberly K. Pendrick (P60348)
Attorneys for Defendant
Michigan Department of Attorney General
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
beachb@michigan.gov
pendrickk@michigan.gov

_____/

**DEFENDANT ATTORNEY GENERAL DANA NESSEL'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Attorney General Dana Nessel moves for the dismissal of Plaintiff Temujin Kensu's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) because this court lacks jurisdiction; Attorney General Nessel is entitled to prosecutorial immunity; and Plaintiff has failed to state a claim for which relief may be granted.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendant Attorney General Dana Nessel respectfully requests that this Honorable Court enter an order dismissing Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), in addition to any other relief this court deems just and equitable under the circumstances, including an award for costs and fees incurred in defense of this groundless action.

Despite reasonable efforts, the movant was unable to conduct a conference seeking concurrence.  On October 3, 2022, counsel for Defendant attempted to directly contact Plaintiff's counsel by email specifying that concurrence was being sought pursuant to E.D. Mich. LR 7.1(a).  Concurrence was not granted.

Respectfully submitted,

*s/Bryan W. Beach*
Bryan W. Beach (P69681)
Kimberly K. Pendrick (P60348)
Assistant Attorneys General
Attorneys for Defendant Nessel
(517)335-7659
beachb@michigan.gov
Dated:  October 6, 2022          penderickk@michigan.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Bryan W. Beach*

Bryan W. Beach (P69681)
Assistant Attorney General

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

     Plaintiff,

                                 No. 22-cv-11834

v

                                 HON. DAVID M. LAWSON

DANA NESSEL, individually and in
official capacity as Attorney General of
the State of Michigan,               MAG. KIMBERLY G. ALTMAN

     Defendant.

Keith Altman (P81702)
Attorney for Plaintiff
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48331
(248) 987-8929
keithaltman@kaltmanlaw.com

Bryan W. Beach (P69681)
Kimberly K. Pendrick (P60348)
Attorneys for Defendant
Michigan Department of Attorney General
Civil Rights & Elections Division
P. O. Box 30736
Lansing MI 48909
(517) 335-7659
beachb@michigan.gov
pendrickk@michigan.gov

_____/

**BRIEF IN SUPPORT OF DEFENDANT ATTORNEY GENERAL
DANA NESSEL'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

Certificate of Service ......................................................................3

Table of Contents ............................................................................ i

Index of Authorities ...................................................................... iii

Concise Statement of Issues Presented ......................................... vii

Controlling or Most Appropriate Authority .................................. vii

Introduction and Statement of Facts ...............................................1

    A.    Relevant Facts .....................................................................1

    B.    Procedural history................................................................3

    C.    Plaintiff's amended claims. ..................................................3

Standard of Review ..........................................................................4

I.    Attorney General Nessel is entitled to immunity against Plaintiff's claims. .........................................................................6

    A.    All claims are barred by absolute prosecutorial immunity. .................6

    B.    All official capacity claims are barred by the Eleventh Amendment. ........................................................................8

    C.    All state law claims are barred by the Eleventh Amendment............11

II.    Plaintiff's due process claims fail as a matter of law and should be dismissed.................................................................12

    A.    Plaintiff's Fourteenth Amendment procedural due process claim should be dismissed because Plaintiff has failed to plead the necessary facts to sustain the claim under § 1983........................12

    B.    Plaintiff's Fourteenth Amendment substantive due process claims should be dismissed because Plaintiff failed to plead the necessary facts to sustain the claim under § 1983. ...........................14

i

1.　Plaintiff has not pleaded sufficient personal involvement on the part of Attorney General Nessel to state a claim under § 1983 ................................................................15

2.　Plaintiff does not plead any violations of his fundamental rights ................................................................16

III.　Plaintiff is unable to prove tortious interference with a contract or breach of contract under Michigan law. ................................................17

V.　Plaintiff is unable to show tortious interference with a business relationship under Michigan law. ................................................19

VI.　Neither the Federal Funding Accountability and Transparency Act nor Mich. Comp. Laws § 770.16 provide for a right of action. ................................20

VII.　Plaintiff's complaint fails to include allegations stating a viable claim against Attorney General Nessel. ................................................22

Conclusion and Relief Requested ................................................24

Certificate of Service ................................................25

# INDEX OF AUTHORITIES

<u>Page</u>

## Cases

*Abick v. Michigan*, 803 F.2d 874 (6th Cir. 1986) ....................................................10

*Alabama v. Pugh,* 438 U.S. 781 (1978) .................................................................9

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) ...............................................................................................................5

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 4, 5, 15, 22

*Badiee v. Brighton Area Schools*, 695 N.W.2d 521(Mich. Ct. App. 2005) ..... 17, 19

*Bank of Am., N.A. v. First Am. Title Ins.*, 878 N.W.2d 816 (Mich. 2016)..............17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................... 5, 6, 22

*Blakely v. United States*, 276 F.3d 853 (6th Cir. 2002) ...........................................8

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..........................................................7

*Burns v. Reed*, 500 U.S. 478 (1991) ........................................................................6

*Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009)...........................................7

*Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002) ......................................10

*Coeur d'Alene Tribe of Idaho*, 521 U.S. 296 (O'Connor, J., concurring)..............10

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)...........................................16

*Crabbs v. Scott*, 786 F.3d 426 (6th Cir. 2015)........................................................11

*Crestmark Bank v. Electrolux Home Products, Inc.*, 155 F. Supp. 3d 723 (E.D. Mich, 2016)....................................................................................................20

*Doe v. Wigginton,* 21 F.3d 733 (6th Cir. 1994) .....................................................14

*Dohaish v. Tooley*, 670 F.2d 934 (10th Cir. 1982) ..................................................6

*Edelman v. Jordan*, 415 U.S. 651 (1974) ................................................................10

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)........................................................11

*Ex parte Young*, 209 U.S. 123 (1908)............................................................... 10, 11

*Greene v. Barber,* 310 F.3d, 889 (6th Cir. 2002) ...................................................15

*Grinter v. Knight,* 532 F.3d 567 (6th Cir. 2008)....................................................15

*Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999), *cert. denied*, 529 U.S.
  1020 (2000).............................................................................................................13

*Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994) ...........................................14

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706
  N.W.2d 843 (Mich. Ct. App. 2005)......................................................................20

*Hope Network Rehab Services v. Michigan Catastrophic Claims Ass'n.*, No.
  355372, 2022 WL 2080880, at *4 (Mich. Ct. App., June 9, 2022) ....................20

*Howell v. Sanders*, 668 F.3d 344 (6th Cir. 2012) .....................................................6

*Imbler v. Pachtman*, 424 U.S. 409 (1976)............................................................6, 7

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1995), cert denied, 522 U.S. 996
  (1997).....................................................................................................................6, 7

*Johnson v. Unknown Dellatifa*, 357 F.3d 539 (6th Cir. 2004) ...............................10

*Kamalnath v. Mercy Mem Hosp Corp,* 194 Mich App 543; 487 N.W.2d 499
  (1992)......................................................................................................................18

*Kloian v. Domino's Pizza LLC*, 273 Mich App 449; 733 N.W.2d 766 (2006) .......18

*Lanier v. Bryant,* 332 F.3d 999 (6th Cir. 2003) ......................................................15

*Lomaz v. Hennosy*, 151 F.3d 493 (6th Cir. 1998).....................................................8

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002)...............................13

*Michigan Southern RR Co. v. Branch & St Joseph Counties Rail Users Ass'n
  Inc.*, 287 F.3d 568 (6th Cir. 2002).........................................................................4

*Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266 (6th Cir. 1990)........4

iv

*Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978) .................15

*Northampton Rest. Group, Inc. v. First Merit Bank, N.A.*, 492 F. App'x 518
    (6th Cir. 2012) ........................................................................................18

*Paul v. Davis*, 424 U.S. 693 (1976) .......................................................................16

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984).....................9, 11

*Quality Products & Concepts Co v. Nagel Precision, Inc*, 469 Mich 362;
    666 N.W.2d 251 (2003)...........................................................................18

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) ....................................................14

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003).................................................8

*Turack v. Guido*, 464 F.2d 535 (3rd Cir. 1972) .........................................................6

*United States v. Gaubert*, 499 U.S. 315 (1991) .........................................................4

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002) ..............................10

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................14

*Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815 (6th Cir. 1999) ...............17

*Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989) ..............................9, 10

## Statutes

28 U.S.C. § 1983 .......................................................................................................3

42 U.S.C. § 1983 ......................................................................................... 8, 10, 15

Mich. Comp. Laws § 770.16................................................................................3, 21

Mich. Comp. Laws § 770.16(1).................................................................................22

Mich. Comp. Laws § 777.16.....................................................................................12

## Rules

Fed. R. Civ. P. 12(b) (1).............................................................................................24

Fed. R. Civ. P. 12(b)(1)...............................................................................4

Fed. R. Civ. P. 12(b)(6)..........................................................................4, 14

Fed. R. Civ. P. 8 ........................................................................................5

Fed. R. Civ. P. 8(a)(2)................................................................................22

## Constitutional Provisions

Mich. Const. 1963, Art. V, § 14.................................................................19

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Does prosecutorial immunity and the Eleventh Amendment bar Plaintiff's claims against Attorney General Nessel?

2.   Does the Eleventh Amendment bar Plaintiff's official capacity claims brought pursuant to § 1983, in addition to all of Plaintiff's state law claims?

3.   Should the Court dismiss Plaintiff's due process claims against Attorney General Nessel where Plaintiff has (a) failed to allege a deprivation of a protected interest under the Due Process Clause; and (b) failed to allege sufficient personal involvement of Attorney General Dana Nessel to state a valid § 1983 claim under the Fourteenth Amendment?

4.   Should the Court dismiss Plaintiff's contract claims in Counts II and III because Plaintiff has failed to identify an enforceable contract?

5.   Should the Court dismiss Plaintiff's tortious interference claim where he failed to allege the existence of a contract or any type of valid business relationship or economic expectancy?

6.   Must Plaintiff's claims be dismissed where the law does not provide for a cause of action?

7.   Must Plaintiff's complaint be dismissed where Plaintiff has failed to include allegations stating a viable claim against Attorney General Nessel?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*Imbler v. Pachtman*, 424 U.S. 409 (1976)
*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)
*Med Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002)
*Doe v. Wigginton*, 21 F.3d 733 (6th Cir. 1994)
*Badiee v. Brighton Area Schools*, 265 Mich. App. 343 (2005)

*Bank of Am., N.A. v. First Am. Title Ins.*, 878 N.W.2d 816 (Mich. 2016)
*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d.
843 (Mich. Ct. App. 2005)
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

## INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Temujin Kensu filed this lawsuit seeking injunctive relief from Defendant Attorney General Dana Nessel based on an application submitted to the Michigan Department of Attorney General's Conviction Integrity Unit (CIU). The CIU investigates claims of innocence to determine whether there is clear and convincing new evidence that the convicted defendant was not the person who committed the offense. Plaintiff's application was denied, and he now claims that Attorney General Nessel has a duty to "exonerate" him.

Plaintiff's claims are wholly without merit. They are based upon what appears to be an intentional disregard of specific facts underlying his application to the CIU. But at this juncture, factual discrepancies need not be addressed because Plaintiff's claims fail as a matter of law. This frivolous lawsuit should be dismissed in its entirety.

### A.    Relevant Facts

The following facts relevant to this motion are drawn from Plaintiff's First Amended Complaint. While Attorney General Nessel does not agree to the veracity and completeness of the facts alleged, she will rely upon them for purposes of this motion only.

Plaintiff is a prisoner that is currently confined to the Michigan Department of Corrections' Macomb Correctional Facility. (ECF No. 7, ¶¶1-2, PageID.67.)

This case involves or stems from an application that was submitted to the CIU. (*Id.*, ¶18, PageID.69.)  The CIU was established as a matter of policy by the Michigan Department of Attorney General in 2019 to investigate claims of innocence.  (*Id.*, ¶9, PageID.67-68.)  There is no statutory requirement for a CIU within the Department.  Plaintiff's application was denied on procedural and technical grounds.[1]  (*Id.*, ¶18, PageID.69.)

Plaintiff does not allege specifically what Attorney General Nessel has done other than having established the CIU.  (*Id.*, ¶26, PageID.70.)  Rather, the basis for Plaintiff's claims is that Attorney General Nessel has not personally or professionally taken remedial actions to exonerate Plaintiff. (*Id.*, ¶23-24, PageID.70.)  Specifically, Plaintiff believes that Attorney General Nessel has a duty to support a request for a new trial and dismissal of criminal charges based upon the investigation of Plaintiff's application.  (*Id.*, ¶¶ 70-77, PageID.18.)  But the amended complaint provides no authority for such a duty.

---

[1] While not germane for purposes of this motion, it is important to note that Plaintiff's application was investigated by the Wayne County Prosecutor's CIU due to a conflict involving the Michigan Department of Attorney General's CIU. Therefore, the investigation was conducted pursuant to the Wayne County Prosecutor's protocols.  It was also the Wayne County Prosecutor's CIU that issued the recommendation and letter denying Plaintiff's application.  Plaintiff is fully aware of this because he acknowledges receiving the letter.

## B.    Procedural history.

Plaintiff initially filed this lawsuit on August 8, 2022.  (ECF No. 1.)

Attorney General Nessel timely filed a motion to dismiss on September 2, 2022.

(ECF No. 5.)  Rather than respond to the motion, Plaintiff filed an amended

complaint adding new allegations and an additional claim for tortious interference.

(ECF No. 7.)

## C.    Plaintiff's amended claims.

Plaintiff states at the outset that all his claims arise pursuant to 42 U.S.C. §

1983.  (ECF No. 7, PageID.66.)  But his complaint consists of what appears to be

five separate counts:

- Count I alleges a violation of due process under 42 U.S.C. § 1983.  (*Id.*, PageID.85.)

- Count II alleges state law claims for tortious interference with a contract and tortious interference with a business relationship.  (*Id.*, PageID.90.)

- Count III alleges a state law claim for breach of contract.  (*Id.*, PageID.93.)

- Count IV is styled as raising claims pursuant to the Federal Funding Accountability and Transparency Act of 2006—Public Law 109-282 (FFATA).  (*Id.*, PageID.95.)  However, Plaintiff appears to later clarify that he is again alleging a violation of due process under 28 U.S.C. § 1983. (*Id.*, ¶¶126-127, PageID.96.)

- Count V is styled as raising state law claims under Mich. Comp. Laws § 770.16 regarding DNA testing.  (*Id.*, PageID.97.) But again, Plaintiff appears to later clarify that he is alleging a violation of due process under 42 U.S.C. § 1983. (*Id.*, ¶¶135-137, PageID.98-99.)

Plaintiff is requesting the same relief in all five counts: (a) an injunction prohibiting Defendant's wrongful actions and (b) all costs sustained in connection with the prosecution of this action, including attorneys' fees. (*Id.*, Page ID.90, 93, 95, 97, 99.)

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) allows dismissal for lack of jurisdiction over the subject matter. Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or in a motion. *Id.* "Where subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan Southern RR Co. v. Branch & St Joseph Counties Rail Users Ass'n Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

In a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the allegations of the plaintiff's complaint and then determine whether the statements are sufficient to make out a right of relief. *United States v. Gaubert*, 499 U.S. 315, 327 (1991). However, although it must accept well-pleaded facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a plaintiff's pleadings, the Court may make reasonable inferences in Plaintiff's favor, "but [the Court is] not required to draw

4

plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, conclusory allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 694.

A complaint may be dismissed if the facts as pleaded do not state a claim for relief that is plausible on its face. See *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations and emphasis omitted).

In *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*. The well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## ARGUMENT

## I.     Attorney General Nessel is entitled to immunity against Plaintiff's claims.

### A.     All claims are barred by absolute prosecutorial immunity.

It is well established that state prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1995), cert denied, 522 U.S. 996 (1997). A prosecutor is absolutely immune from civil suit based on a decision not to prosecute or to terminate a prosecution. *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir. 1982); *Turack v. Guido*, 464 F.2d 535 (3rd Cir. 1972). The U.S. Supreme Court employs a "functional approach" to determine whether a prosecutor acted within the scope of his or her prosecutorial duties to which absolute immunity attaches, or whether he or she acted in an administrative function - e.g., offering legal advice or directing an investigation, which lie beyond such immunity's protections. *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991), and *Buckley v.*

6

*Fitzsimmons*, 509 U.S. 259, 269 (1993).)  The critical inquiry regards "how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Ireland*, 113 F.3d at 1443.  Advocacy is the distinguishing factor between those functions integral to the judicial phase of the criminal process and those which are essentially administrative or investigative in nature, and absolute prosecutorial immunity applies in matters where a prosecutor acts as an advocate for the State, advancing the State's interests in the prosecution. *Cady v. Arenac County*, 574 F.3d 334, 340 (6th Cir. 2009).  Accordingly, a prosecutor may bring and litigate criminal charges with absolute immunity, even if the prosecutor acts with malice and without probable cause. *Buckley*, 509 U.S. at 274, n 5; *Imbler*, 424 U.S. at 427.

Here, Nessel is the Attorney General for the State of Michigan.  (ECF No. 7, ¶ 3, PageID.67.)  And it appears—based on the First Amended Complaint—that the primary basis for Plaintiff's claims is that Attorney General Nessel, in her capacity as a prosecutor, did not request a new trial or dismiss criminal charges. (*Id.*, ¶¶ 77, 98–99, 110, 122, 130, PageID.85-96.)  Clearly, these are decisions made within Attorney General Nessel's role as an advocate for the State.  In addition, it is well established that "[a]bsolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings, including direct appeals, habeas corpus proceedings, and parole proceedings, where the prosecutor is

7

personally involved in the subsequent proceedings and continues his role as an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003); See also, *Blakely v. United States*, 276 F.3d 853, 871 (6th Cir. 2002) (prosecutor's decision not to agree to vacate a civil forfeiture judgment is in the nature of advocacy rather than administrative conduct and is covered by the absolute immunity doctrine). And prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously. *Lomaz v. Hennosy*, 151 F.3d 493, 498 n. 7 (6th Cir. 1998). For these reasons, Attorney General Nessel is absolutely immune based on her alleged decision not to request a new trial for Plaintiff or seek to vacate his conviction. Plaintiff's claims must therefore be dismissed because they are barred by immunity.

### B.     All official capacity claims are barred by the Eleventh Amendment.

Plaintiff has sued Attorney General Nessel in her official capacity and has stated that all claims are brought pursuant to 42 U.S.C. § 1983. (ECF No. 7, PageID.66.) The United States Constitution, Amendment XI, provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

The Eleventh Amendment to the United States Constitution prevents a state from being sued in federal court without its consent. *Alabama v. Pugh,* 438 U.S.

8

781, 782 (1978).  An unconsenting state is immune from lawsuits brought in federal court by its own citizens, as well as by citizens of another state.  *Alden v. Maine*, 527 U.S. 706, 712-713 (1999) The Eleventh Amendment is a constitutional restriction on the federal judicial power "based in large part on 'the problems of federalism inherent in making one sovereign appear against its will in the courts of the other.'"  *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

The U.S. Supreme Court has consistently ruled that the Eleventh Amendment is a bar to lawsuits against states, state agencies or state departments unless specifically overridden by an act of Congress, or unless the state has consented to be sued.  *Id.*; *Pugh,* 438 U.S. at 782.  A suit against a State, a state agency or its department, or a state official is in fact a suit against the State and is barred "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100-02 (citations omitted). Further, state officials acting in their official capacity are also not "persons" under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity is subject to three exceptions: (1) congressional abrogation; (2) waiver by the State; and (3) "a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law." *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir.

2002) (citations omitted).  Congress did not abrogate the States' sovereign immunity when it enacted 42 U.S.C. § 1983.  *Will*, 491 U.S. 58, 66 (1989).  Also, the State of Michigan has not waived its immunity.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)).

Here, Plaintiff's claims against Attorney General Nessel in her official capacity claims do not fall within the exceptions rising from the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. 296 (O'Connor, J., concurring)).

Here, it is far from clear whether Plaintiff's request for injunctive relief is prospective in nature, as opposed to retroactive.  *See Edelman v. Jordan*, 415 U.S. 651, 666-667 (1974).  Plaintiff is not seeking for Attorney General Nessel to conform her conduct to the law in the future, but rather to retroactively *undo* the denial of Plaintiff's application to the CIU, and to "exonerate" him.  Indeed, what Plaintiff requests is that this Court make a determination in place of Attorney

10

General Nessel and the CIU.  Such a request is not consistent with long-established principles of state sovereignty.  As a result, the *Ex Parte Young* exception to the Eleventh Amendment does not apply to Plaintiff's claims.

### C.    All state law claims are barred by the Eleventh Amendment.

In Count II (tortious interference), Count III (breach of contract) and Count V (Michigan DNA statute), Plaintiff brings state law claims against Attorney General Nessel.  But Eleventh Amendment sovereign immunity prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature.  *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005). Sovereign immunity for state governments is "firmly enshrined in our constitutional framework and shields the States from private lawsuits absent their consent or permissible abrogation by Congress."  *Crabbs v. Scott*, 786 F.3d 426, 428–29 (6th Cir. 2015).  State governments and state officers in their official capacities are entitled to sovereign immunity for claims brought in federal court under state law.  See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-121 (1984).  Thus, the Eleventh Amendment bars Plaintiff's tortious interference, breach of contract and state law DNA testing claims (Counts II, III & V) against Attorney General Nessel in her official capacity.

11

## II.     Plaintiff's due process claims fail as a matter of law and should be dismissed.

Plaintiff appears to allege three causes of action under Section 1983.  Counts I, IV and V mirror each other by alleging that Attorney General Nessel violated Plaintiff's due process rights under the Fourteenth Amendment, albeit under different theories.  Count I relies on an alleged failure to act pursuant to CIU protocols, a National Institute of Justice grant, her oath of office, and the Michigan Rules of Professional Responsibility.  Count IV refers to an alleged failure to adhere to the Federal Funding Accountability and Transparency Act (FFATA).  And Count V is based upon an alleged failure to adhere to Mich. Comp. Laws § 777.16.  But it is not entirely clear from Plaintiff's complaint whether he is alleging procedural or substantive due process violations.  Nevertheless, his claims fail in either regard.

### A.     Plaintiff's Fourteenth Amendment procedural due process claim should be dismissed because Plaintiff has failed to plead the necessary facts to sustain the claim under § 1983.

To establish a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must prove three elements:

> (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . ., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn*

*v. Star Bank*, 190 F.3d 708 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000)).

Here, Plaintiff cannot establish any of the required elements. This is

because he has not established the existence of a protected interest. There is no

legal precedent that establishes a right to be granted a new trial by the CIU—or to

be "exonerated" by the Attorney General—as a protected property right.

Plaintiff also cannot meet the third element: lack of adequate procedural

rights before deprivation. Plaintiff admits that his application was received by the

CIU and fully investigated—he is just unhappy about the outcome. Plaintiff alleges

that after the CIU reviewed his application and produced a recommendation,

Attorney General Nessel "had a duty to take appropriate remedial action, including

supporting requests for a new trial and dismissal of criminal charges." (ECF No.7,

¶77, PageID.85-86.) But Plaintiff does not provide any legal authority for such a

duty under the law. And nowhere does Plaintiff allege that he was denied access to

the CIU program or a full consideration of his application.

Above all, Plaintiff also does not allege sufficient facts to support claims that

Attorney General Nessel had anything to do with an alleged procedural due

process violation. Nor are there any specifically alleged actions taken by Attorney

General Nessel outside of her official capacity as Attorney General—or outside the

scope of her role as a prosecutor. Since Plaintiff has failed to allege a valid claim, this Court should dismiss under Fed. R. Civ. P. 12(b)(6).

**B.      Plaintiff's Fourteenth Amendment substantive due process claims should be dismissed because Plaintiff failed to plead the necessary facts to sustain the claim under § 1983.**

Plaintiff does not allege a violation of a fundamental right—or enough personal involvement of Attorney General Nessel—to support a substantive due process claim.  To state such a claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton,* 21 F.3d 733, 738 (6th Cir. 1994).  Fundamental rights include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, and to bodily integrity. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  The Sixth Circuit recognizes two types of substantive due process violations: "(1) official acts that are unreasonable and arbitrary and may not take place no matter what procedural protections accompany them, and (2) official conduct that 'shocks the conscience.'" *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (internal citations and quotation marks omitted).  "Actions meet this high standard if they are an egregious abuse of governmental power." *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999).

14

### 1. Plaintiff has not pleaded sufficient personal involvement on the part of Attorney General Nessel to state a claim under § 1983.

It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior.  See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691 (1978).  In other words, to recover under § 1983, a plaintiff must establish a defendant's *personal responsibility* for the claimed deprivation of a constitutional right.  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal,* 556 U.S. at 676.  The acts of one's subordinates are not enough; nor can supervisory liability be based upon the mere failure to act.  *Grinter v. Knight,* 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir. 2002).  Furthermore, conclusory, unsupported allegations are insufficient to state a claim under § 1983. *See Lanier v. Bryant,* 332 F.3d 999, 1007 (6th Cir. 2003).

As stated above, because this action is brought against an individual under § 1983, Plaintiff must demonstrate *personal* involvement on the part of Attorney General Nessel.  But the only specific allegations attributable to the Attorney General is that she created the CIU.  The remainder of the allegations involve acts that Plaintiff *believes* should have been performed but were not.  The failure to request a new trial or "exonerate" Plaintiff—as a matter of law—do not create a

cause of action under § 1983.  Because no personal actions on the part of Attorney

General Nessel have been identified by the Plaintiff as causing a deprivation of

rights, Counts I, IV and V must be dismissed as insufficient to state a claim upon

which relief can be granted.

### 2.    Plaintiff does not plead any violations of his fundamental rights.

Just because Plaintiff alleges a state violation does not mean the Fourteenth

Amendment is implicated—the United States Constitution must guarantee the right

as "implicit in the concept of ordered liberty."  *Paul v. Davis*, 424 U.S. 693, 713

(1976).  Therefore, to the extent that Plaintiff is asserting a violation of a

fundamental right protected by the substantive due process component of the

Fourteenth Amendment, this assertion deviates from the law.

Plaintiff also fails to allege any conduct that could be viewed as "shocking

the conscience."  To pass this test, the conduct must be so egregious as to violate

society's ideas of decency and fair play.  *County of Sacramento v. Lewis*, 523 U.S.

833, 847 (1998).  Here, Plaintiff only alleges that Attorney General Nessel failed to

act in the manner in which he would prefer, i.e., to request a new trial or dismiss

the charges against him.  For these reasons, Plaintiff has failed to state a viable

§ 1983 substantive due process claim.

**III.    Plaintiff is unable to prove tortious interference with a contract or breach of contract under Michigan law.**

Plaintiff's amended complaint brings two state law contract claims: tortious interference with a contract (Count II) and breach of contract (Count III).  But even if Plaintiff were permitted to proceed with these claims, he cannot meet his burden for either under Michigan law.

"The elements of tortious interference with a contract are (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." *Badiee v. Brighton Area Schools*, 695 N.W.2d 521, 538-539 (Mich. Ct. App. 2005); See also, *Adamo Demolition Co v. Int'l. Union of Operating Engineers Local 150, AFL-CIO*, 3 F.4th 866, 873 (6th Cir. 2021).  Similarly, to prove a breach of contract claim, the plaintiff must demonstrate that there was a contract between the parties requiring the performance of specific actions, one party breached the contract, and the breach caused injury to the other party.  *Bank of Am., N.A. v. First Am. Title Ins.*, 878 N.W.2d 816, 829 (Mich. 2016); see also *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).  Here, Plaintiff is not able to meet these conditions for multiple reasons—most importantly because the CIU application is not a contract.

First, it is a basic tenant of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.  *Northampton Rest. Group, Inc. v. First Merit Bank,*

*N.A.*, 492 F. App'x 518, 521 (6th Cir. 2012).  But the alleged contract in this case—Plaintiff's application to the CIU—is not attached to the complaint.  Nor does the complaint include the language of the specific contractual provisions that have been allegedly breached.  This failing alone should be fatal to Plaintiff's contract claims.

Second, Plaintiff has the burden to show that a contract exists in order for the contract to be enforced, because "the court cannot make a contract for the parties when none exists."  *Kamalnath v. Mercy Mem. Hosp. Corp.,* 487 N.W.2d 499, 503 (1992).  By its very nature, Plaintiff's *application* to the CIU is not a contract.  It is a request to which there are obviously a range of possible outcomes, including the possibility that it would be denied.

Finally, a contract requires mutual assent or a meeting of the minds on all the essential terms*.  Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 770 (2006).  "Where mutual assent does not exist, a contract does not exist."  *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (2003).  The amended complaint does not allege that anyone agreed to take remedial actions to request a new trial or dismiss criminal charges in exchange for Plaintiff submitting an application.  In fact, such a notion runs contrary to the stated purpose of the CIU, which is to *investigate* claims to determine *if* there is new evidence. (ECF No.7, ¶70, PageID.70.)  By way of analogy, Plaintiff's application submitted to the

CIU is similar to a request for a commutation submitted to the governor's office. Mich. Const. 1963, Art. V, § 14. After an investigation, the governor will either grant or deny the request. But there is no agreement for release based solely on submission of a request.

Thus, by law, Plaintiff's application was not a contract, and without a contract there cannot be interference or a breach. His tortious interference and breach of contract claims must therefore fail.

## V.   Plaintiff is unable to show tortious interference with a business relationship under Michigan law.

Plaintiff's first amended complaint also added a claim of tortious interference with a business relationship under Count II. But even if it were not barred by immunity, this new claim would still fail. In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy. *Badiee,* 695 N.W.2d at 538-539. The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Crestmark Bank v. Electrolux*

*Home Products, Inc.*, 155 F. Supp. 3d 723, 746 (E.D. Mich, 2016) (citing *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 848-849 (Mich. Ct. App. 2005)). A tortious interference with a business relationship claim requires an allegation "of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or the business relationship of another." *Hope Network Rehab Services v. Michigan Catastrophic Claims Ass'n.*, No. 355372, 2022 WL 2080880, at *4 (Mich. Ct. App., June 9, 2022).

Here, Plaintiff cannot establish any of the required elements. The amended complaint does not allege that there was any type of valid business relationship or economic expectancy based upon the application to the CIU, let alone a contract with another. Indeed, Plaintiff is an *incarcerated prisoner* and has not identified any type of business or economic relationship that could be subject to interference. Count II should therefore be dismissed in its entirety for failure to state a claim.

## VI. Neither the Federal Funding Accountability and Transparency Act nor Mich. Comp. Laws § 770.16 provide for a right of action.

In Counts IV and V, Plaintiff appears to raise statutory claims under federal and state law. Even if these claims were not barred by immunity, they would still fail because neither law provides for a private right of action of this nature.

As explained above, Count III purports to bring claims pursuant to the FFATA. Signed into law in 2006, the FFATA requires that the federal Office of

Management and Budget (OMB) create a searchable, no-cost, publicly accessible website for each federal award of $30,000 or more, which includes basic information about the recipient and the project being funded.[2]  The FFATA was later amended by the Government Funding Transparency Act of 2008 (Public Law 110-252) requiring recipients to report certain information about themselves and their first-tier subrecipients for awards obligated as of October 1, 2010.  But nowhere in either the FFATA or its subsequent amendment did Congress provide for a private right of action for citizens based on alleged violations of this act. Furthermore, it is entirely unclear what relationship the FFATA has to any of the allegations in this case.  Attorney General Nessel has no relationship to the OMB and there are no allegations that she in any way failed to report information regarding any awards.  For these reasons, Count III should be dismissed for failure to state a claim.

Similarly, Count IV is brought pursuant to Mich. Comp. Laws § 770.16. But this state statute only provides for the ability of a defendant serving a prison sentence to petition the circuit court to order DNA testing and/or a new trial.[3]

---

[2] See, FFATA FAQs, available at https://www.hrsa.gov/grants/ffata/faqs. (accessed October 4, 2022.)

[3] While again not relevant for purposes of this motion, it is important to clarify that no DNA testing was conducted in connection with Plaintiff's application to the CIU.  However, Plaintiff is still able to request DNA testing pursuant to the procedures set forth in Mich. Comp. Laws § 770.16.

Mich. Comp. Laws § 770.16(1).  The statute does not require that anyone—

including the Attorney General—request testing on a defendant's behalf.  And

nowhere does it provide the ability to file a civil action against the Attorney

General, or any other state official.  Finally, it is wholly unclear what Plaintiff's

ability to pursue DNA testing has to do with the CIU, Attorney General Nessel, or

any of the allegations in this lawsuit.  For these reasons, and those previously

explained, Count IV should be dismissed.

## VII.   Plaintiff's complaint fails to include allegations stating a viable claim against Attorney General Nessel.

A complaint must contain a short and plain statement of the claim showing

that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Detailed factual

allegations are not required, but the Rule does call for sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  *Twombly*,

550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  The plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do.  *Twombly*,

550 U.S. at 555.  The pleading must contain something more than a statement of

facts that merely creates a suspicion of a legally cognizable right of action on the

assumption that all the allegations in the complaint are true.  *Id.*  Conclusory

allegations do not suffice. *Iqbal*, 556 U.S. at 678.  Here, Plaintiff has failed to meet

even these minimal standards.

Even if Plaintiff's claims in this case were permitted by law, it is unclear based upon the wording of the specific allegations exactly what Attorney General Nessel is alleged to have done or why she would be involved in specific actions as alleged.  The amended complaint is also rife with conclusory allegations.  For example, in what appears to be an attempt to avoid Attorney General Nessel's absolute prosecutorial immunity, Plaintiff has added many conclusory allegations regarding alleged actions in her personal capacity and outside of the scope of her duties. (ECF No. 7, ¶¶23-24, 79, 83, 85, 109, PageID.70-92.)  But nowhere does Plaintiff include any particularized factual basis to support these claims.

Plaintiff also requests an injunction prohibiting Attorney General Nessel's allegedly wrongful actions.  But the only thing clearly alleged is what Attorney General Nessel did *not* do, i.e., exonerate Plaintiff, request a new trial, and dismiss criminal charges.  And overall, the amended complaint shows little effort to present any manner of factual development identifying any particularized acts or omissions that would result in liability in Attorney General Nessel's *individual* capacity or outside of the scope of her role as a prosecutor.

Similarly, Plaintiff's extensive discussion of DNA testing appears to in no way relate to Attorney General Nessel.  Plaintiff does not even appear to allege that such testing occurred.  It is therefore entirely unclear why these allegations are included.

Therefore, in the absence of any allegations stating a viable cause of action, giving notice of the nature of the claims, or establishing subject-matter jurisdiction, Plaintiff has failed to state a claim against Attorney General Nessel and the complaint against her must be dismissed.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendant Attorney General Dana Nessel respectfully request that this Honorable Court enter an order dismissing Plaintiff's first amended complaint in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b) (1) and (6), in addition to any other relief this Court deems just and equitable under the circumstances, including an award for costs and fees incurred in defense of this groundless action.

Respectfully submitted,

_s/Bryan W. Beach_
Bryan W. Beach (P69681)
Kimberly K. Pendrick (P60348)
Assistant Attorneys General
Attorney for Defendant Nessel
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
beachb@michigan.gov

Dated: October 6, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Bryan W. Beach*
Bryan W. Beach (P69681)
Assistant Attorney General